BLANK ROME LLP
*Attorneys for Plaintiff*
405 Lexington Avenue
New York, New York 10174
(212) 885-5000
John D. Kimball
Alan M. Weigel

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ODYSSEY MARINE EXPLORATION, INC.,<br><br>Plaintiff,<br><br>-against-<br><br>THE SHIPWRECKED AND ABANDONED SS MANTOLA, its cargo, apparel, tackle, and appurtenances, etc., located within a five nautical mile radius of the coordinates 49° 50' 16.391''N, 13° 06' 11.767'' W, *in rem,*<br><br>Defendant. | Case No. :<br><br><br><br><br>**VERIFIED COMPLAINT IN ADMIRALTY IN REM** |

Plaintiff, Odyssey Marine Exploration, Inc. ("Odyssey"), by and through its undersigned counsel, for its Complaint *in rem* against the SHIPWRECKED and ABANDONED SS MANTOLA, its cargo, apparel, tackle, and appurtenances, etc. (hereinafter, collectively the "Vessel"), located within a five nautical mile radius of the coordinates 49° 50' 16.391''N, 13° 06' 11.767'' W, alleges as follows:

**JURISDICTION AND VENUE**

1.       This is a case of admiralty and maritime jurisdiction within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and Supplemental Admiralty Rules C and D as hereinafter more fully appears. The Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1333.

127643.06508/105536874v.1

2.     The Court has *in rem* jurisdiction over artifacts from the Vessel and the Vessel's cargo which are now or will be within the district during the pendency of this action pursuant to Fed. R. Civ. P. Supp. R. C(1) - (2).

3.     The court has constructive *in rem* jurisdiction over the Vessel's cargo and artifacts and other remains still at the shipwreck site. *See, e.g.*, *R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 964 (4th Cir. 1999); *R.M.S. Titanic, Inc. v. The Wrecked & Abandoned Vessel*, 435 F.3d 521, 537 – 38 (4th Cir. 2006).

4.     Venue is proper in the Southern District of New York because certain artifacts recovered from the Vessel have been or will be brought within the District and surrendered to the Court's jurisdiction.

## THE PARTIES

5.     Odyssey is a Nevada corporation with its principal place of business at 5215 West Laurel St., Tampa, Florida 33607.  Odyssey is engaged in the business of deep ocean exploration and the archaeological investigation and recovery of valuable cargo from shipwrecks around the world.

6.     The Vessel is located on the ocean bottom at a depth of approximately 2500 meters in the North Atlantic Ocean, beyond the territorial waters or contiguous zone of any sovereign nation, approximately 300 nautical miles west of the entrance to the English Channel.  The shipwreck's position is located in an area defined by the center-point coordinates 49° 50' 16.391"N, 13° 06' 11.767" W (the "shipwreck site").  Subject to the Court's approval, the exact coordinates of the area in which the Vessel is located will be provided to the Court under seal to protect Odyssey's rights as the exclusive salvor of the Vessel.

127643.06508/105536874v.1

## ALLEGATIONS OF FACT

7.     Odyssey first located the Vessel in 2011 using sophisticated sonar equipment. Shortly thereafter, Odyssey used a surface-controlled remotely operated vehicle ("ROV") to survey the shipwreck site and recover artifacts.

8.     Upon information and belief, based upon its research and a preliminary assessment of the shipwreck site by Odyssey's technicians and historians, the Vessel is believed to be the SS Mantola, a United Kingdom-flagged 8,260 gross ton passenger steamship, built in 1916 by Barclay Curle & Co. which sank on or about February 9, 1917 during World War I.  At the time of its sinking, the Vessel was owned by the British-India Steam Navigation Company.

9.     Upon information and belief, the Vessel's cargo when it sank included quantities of silver consisting of 536 silver bars each weighing roughly 1,000 ounces.  The cargo claim was believed to have been covered under War Risk Insurance.   In the past, the United Kingdom's Department for Transport (the "DfT") has claimed ownership of the cargo.

10.     In 2011, the DfT and Odyssey entered into an agreement for the salvage of the cargo, which provided that Odyssey would retain 80% of the net value of the recovered silver. Odyssey assumed the risk, expense and responsibility for the search, cargo recovery, documentation and marketing of the cargo.  The agreement lapsed in September 2015.  Odyssey's contract with the DfT was not renewed due to a change in DfT's policy whereby it ceased renewing or entering into new salvage contracts.

11.     Upon information and belief, no known entity or person presently claims any ownership interest in the Vessel or its cargo.

12.     Upon information and belief, no other salvor is currently working on the Vessel. Odyssey does not have any specific knowledge of any current recovery operations other than those

3

by Odyssey which have been conducted on the Vessel or in the shipwreck site, and, to the best of Odyssey's knowledge, no other salvor ever has sought to protect an interest in the Vessel or its cargo through an *in rem* action or arrest in any jurisdiction.  To the best of Odyssey's knowledge, no other salvor is currently under contract with the DfT to conduct salvage operations.

13.    Odyssey is the only party that is currently engaged in extensive exploration, recovery and survey operations on the Vessel.  Odyssey has voluntarily and successfully obtained video and photographic images of the Vessel and has begun documentation of the site.

14.    Odyssey is ready and able to conduct operations to recover artifacts and cargo from the shipwreck site.

15.    Odyssey has maintained actual, continuous, and exclusive possession or constructive occupancy of the shipwreck site since it first located the Vessel to the extent this is possible, and, subject to the Court's orders, intends to remove the valuable cargo which can be recovered in a commercially viable manner.

16.    Odyssey is currently developing a plan and   process to ensure that its recovery operations for the Vessel's cargo and artifacts are consistent with appropriate respect for historical study of the shipwreck as well as commercially viable protocols and the recovery operations will proceed consistent with these protocols.

17.    The shipwreck site consists of vessel remains, metal objects, the Vessel's cargo and other loose objects. Odyssey's prior operations and research have led it to believe that additional and more valuable cargo is likely located at or near the shipwreck site.

18.    Odyssey's recovery operation is directed at the cargo and certain artifacts which were onboard the Vessel when it sank.

127643.06508/105536874v.1

19.     Odyssey recovered a piece of silk cloth from the wreck of the Vessel during recovery operations at the shipwreck site.

20.     Odyssey recovered the ship's bell inscribed with the letters "MANTOLA" during recovery operations at the shipwreck site.  The bell is currently located in a conservation facility in Norwich, United Kingdom in the care of Odyssey Marine and under the jurisdiction of the United Kingdom's Receiver of Wreck.

21.     Upon or soon after the filing of this action, Odyssey intends to turn over to the United States Marshal for the Southern District of New York for arrest *in rem* the silk cloth recovered from the Vessel.

22.     In addition to the silk cloth, Odyssey has documented several objects it has found on the Vessel or in the shipwreck site.  Any further artifacts and cargo recovered from the shipwreck site will be recovered under the jurisdiction of this Court, and will be within the actual and/or constructive possession of this Court or its duly-appointed Substitute Custodian during the pendency of this action.

23.     Odyssey has invested substantial time, money and effort in locating, surveying, photographing and researching the history of the Vessel and in planning the physical recovery of artifacts and cargo from the Vessel.

24.     Odyssey has been actively and successfully engaged in the process of recovering artifacts and the cargo from the Vessel to its exclusive custody, possession, dominion and control, as circumstances permit, and Odyssey has the present ability and intention to continue to do so during the pendency of this action.

127643.06508/105536874v.1

## FIRST CAUSE OF ACTION

### POSSESSORY AND OWNERSHIP CLAIM
### <u>PURSUANT TO THE LAW OF FINDS</u>

25. Plaintiff incorporates herein by reference, as though fully set forth herein, the allegations set forth above in paragraphs 1 through 24.

26. This count arises under Supplemental Admiralty Rule D and general maritime law.

27. The Plaintiff is, by virtue of its exclusive possession, dominion and control of the Vessel, in possession of the Vessel, its cargo and artifacts and has taken such actions as are necessary to constitute continued possession, dominion and control of the abandoned shipwreck.

28. As the Vessel was abandoned, Odyssey is entitled to an adjudication of title and ownership in the Vessel, and its cargo and artifacts, and the right to recover the Vessel and its cargo and artifacts without the interference of any other salvor, claimant, agency, department or instrumentality of any government, domestic or foreign.

29. The Court should award Plaintiff ownership of the cargo and artifacts recovered at the shipwreck site under the law of finds and pursuant to Supplemental Admiralty Rule D.

## SECOND CAUSE OF ACTION

### CLAIM FOR RIGHTS TO THE VESSEL
### <u>PROPERTY DEPOSITED WITH COURT</u>

30. Plaintiff incorporates by reference, as though fully set forth herein, the allegations set forth above in paragraphs 1 through 29.

31. This count arises in the alternative under Supplemental Admiralty Rule C and the general maritime law.

32. The Court has *in rem* jurisdiction over the silk cloth recovered from the Vessel and turned over to the United States Marshal for the Southern District of New York.

6

33.     Odyssey is entitled to exclusive salvage rights to the Vessel's artifacts deposited with the Court.

**THIRD CAUSE OF ACTION**

**CLAIM FOR SALVAGE RIGHTS TO THE
VESSEL INCLUDING ITS CARGO AND
ARTIFACTS AT THE SHIPWRECK SITE**

34.     Plaintiff incorporates by reference, as though fully set forth herein, the allegations set forth above in paragraphs 1 through 33.

35.     This count arises in the alternative under Supplemental Admiralty Rule C and the general maritime law.

36.     The Court has constructive *in rem* jurisdiction over the Vessel, including all of its cargo and artifacts at the shipwreck site, based on the silk cloth turned over to the United States Marshal for the Southern District of New York.  *See, e.g., R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 964 (4th Cir. 1999); *R.M.S. Titanic, Inc. v. The Wrecked & Abandoned Vessel*, 435 F.3d 521, 537 – 38 (4th Cir. 2006).

37.     Odyssey has acted with due diligence with regard to salvaging the Vessel and cargo and other property at the shipwreck site.

38.     Odyssey's recovery operations are ongoing, including care and management of the previously salvaged material.

39.     Odyssey has a clear prospect of success, as evidenced by its current salvage operations, which have already resulted in the acquisition of artifacts from the Vessel and based on its previous history of recovery operations of cargoes from shipwrecks at similar depths using similar technology.

40.     No other party has tried to intervene in the current salvage operations on the Vessel.

7

41.     Odyssey is entitled to exclusive rights as the salvor-in-possession of the Vessel, including its cargo and all artifacts at the shipwreck site.

## FOURTH CAUSE OF ACTION

### SALVAGE AWARD CLAIM
### PURSUANT TO THE LAW OF SALVAGE

42.     Plaintiff incorporates by reference, as though fully set forth herein, the allegations set forth above in paragraphs 1 through 41.

43.     This count arises in the alternative under Supplemental Admiralty Rule C and the general maritime law as salvage services constitute a preferred maritime lien.

44.     The Vessel, its cargo and other property at the shipwreck site are subject to maritime peril and are in an utterly helpless condition from which they could not be rescued without the voluntary and successful services of Odyssey.

45.     Plaintiff is under no current legal obligation or official duty to render salvage services to the Vessel.

46.     Plaintiff's voluntary services have been and will continue to be successful in rescuing and/or helping to rescue artifacts from the Vessel in order to investigate and conduct historical research relating to the Vessel, to preserve and display artifacts of historical significance, and to return recovered cargo to the stream of commerce from which they were lost.

47.     Plaintiff, by virtue of services performed, the private risk capital expended, and the time spent and danger incurred in finding and recovering the cargo and artifacts from the Vessel, is entitled to a salvage award for such services amounting to the value of the cargo and artifacts recovered.

127643.06508/105536874v.1

## FIFTH CAUSE OF ACTION

### CLAIM FOR INJUNCTIVE RELIEF
### TO PROTECT THE RECOVERY OPERATION

48.    Plaintiff incorporates by reference, as though fully set forth herein, the allegations set forth above in Paragraphs 1 through 47.

49.    The rights and efforts of the Plaintiff, the economic value and integrity of the cargo and artifacts sought, the successful recovery of lost and abandoned property at sea, and the safety of life and limb mandate that Plaintiff be protected by the Court in maintaining exclusive dominion and control of its recovery activities concerning the Vessel without the interference of any third-parties, and to have exclusive rights to recover property at the shipwreck site for as long as Plaintiff intends to conduct operations at the site.

50.    Allowing interference with Plaintiff's ongoing operations would substantially and irreparably injure Plaintiff, would be inequitable, would be harmful to the public good, would constitute a significant hazard to safe and successful salvage operations, and would be contrary to a balancing of the respective interests of the parties and the comparative hardships borne.

51.    Odyssey expects that competitors may attempt to interfere with Odyssey's ongoing operations at the shipwreck site.

52.    In order to adequately protect the security of Plaintiff's recovery operations, this Court should appoint Odyssey as the exclusive salvor and the Court's exclusive trustee and enter a preliminary injunction prohibiting any rival salvors or entity from conducting search and/or recovery operations, or conducting activities that would disturb the Vessel and/or its cargo and any artifacts from the Vessel in any manner, or that would interfere with Plaintiff's rights to continue its recovery of the Vessel.

127643.06508/105536874v.1

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief as follows:

(a)     that the Court exercise *in rem* jurisdiction over the silk cloth recovered from the Vessel and turned over to the United States Marshal for the Southern District of New York;

(b)     that the Court exercise constructive *in rem* jurisdiction over the Vessel, including its cargo and all artifacts from the Vessel at the shipwreck site;

(c)     that the Court enter an order appointing Odyssey as the substitute custodian for any cargo and all artifacts recovered from the Vessel;

(d)     that the Court enter an order appointing Odyssey finder-in-possession, or in the alternative, exclusive salvor-in-possession of the Vessel, including its cargo and all artifacts, and awarding Odyssey priority salvage status, and sole and exclusive possession of the Vessel, including its cargo and all artifacts;

(e)     that Odyssey be adjudged the true, sole and exclusive owner of the Vessel and any items recovered therefrom including its cargo and all artifacts from the Vessel;

(f)     in the alternative, should any claimant other than Odyssey be adjudged the owner of the Vessel, or any items recovered therefrom, that Odyssey be awarded a liberal salvage award, preferably in cargo, with the amount and/or composition of such award as may be determined by this Court pursuant to the law of salvage;

(g)     that Odyssey be adjudged as having the sole and exclusive right to conduct recovery operations on the Vessel, including but not limited to its cargo, to preserve any artifacts recovered from the Vessel as finder-in-possession, or in the alternative, as salvor-in-possession, without the interference of other third-parties, and that any and all such interference be temporarily and permanently enjoined; and

10

(h)    that process *in rem* and/or constructive *in rem* and a Warrant of Arrest may issue in due form of law, in accordance with the Supplemental Admiralty Rules and the practice of this Honorable Court in causes of admiralty and maritime jurisdiction against the aforesaid Vessel, and/or the cargo and any artifacts recovered from the Vessel, and, since it is impractical for the U.S. Marshal to take full possession of the Vessel, its cargo, apparel, tackle, appurtenances, and armament, etc., that additional ancillary process issue pursuant to Supplemental Admiralty Rules E(4)(b), C(5) and D with public notice to all persons claiming an interest in Odyssey's ongoing recovery operations be given in such form as the Court may direct to appear and answer this Complaint;

(i)    that all governments, governmental agencies, states, persons, firms or corporations claiming an interest in the defendant Vessel be cited to appear before this Honorable Court to show cause why the cargo and artifacts recovered from the Vessel by Odyssey and its associates should not be:

(1)    delivered to Odyssey as the sole and exclusive owner of said cargo and artifacts; or

(2)    alternatively, sold or appropriately disposed of in satisfaction of any judgment in favor of Odyssey for a salvage award; and

(j)    that Odyssey be awarded attorneys' fees and costs against all unsuccessful claimants as may appear in this action; and

(k)    that Odyssey may have such other and further relief as the justice of this cause may require.

11

Dated:       New York, New York
              April 20, 2017

Respectfully submitted,
BLANK ROME LLP
*Attorneys for Plaintiff*

By /s/*John D. Kimball*_____
John D. Kimball
Alan M. Weigel
405 Lexington Ave.
New York, NY 10174
Tel.:  (212) 885-5000
jkimball@blankrome.com
aweigel@blankrome.com

12

127643.06508/105536874v.1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ODYSSEY MARINE EXPLORATION, INC., <br><br> Plaintiff, <br><br> -against- <br><br> THE SHIPWRECKED AND ABANDONED SS MANTOLA, its cargo, apparel, tackle, and appurtenances, etc., located within a five nautical mile radius of the coordinates 49° 50' 16.391"N, 13° 06' 11.767" W, *in rem,* <br><br> Defendant. | Case No. : <br><br><br><br><br><br> **VERIFICATION OF** <br> **COMPLAINT** |

Pursuant to 28 U.S.C. §1746, Mark Gordon declares under the penalty of perjury:

1.      I am President and Chief Executive Officer of Plaintiff, Odyssey Marine Explorations, Inc. (hereinafter referred to as "Odyssey"). I became President in 2007 and CEO in 2014. I am competent to testify as to the matters covered in this declaration.

2.      I have read the foregoing Verified Complaint and I believe the contents thereof are true.

3.      The sources of my information and belief are my personal knowledge of the information contained therein and information contained within Odyssey's files and records.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 20, 2017, at Tampa, Florida.

Mark Gordon

127643.06508/105537594v.1