PHELPS DUNBAR, LLP
Attorneys for Claimant DfT
100 S. Ashley Dr., Ste. 1900
Tampa, FL 33602-5315
(813) 472-7550
Timothy P. Shusta

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ODYSSEY MARINE EXPLORATION, INC.,          Case No.: 1:17-cv-02924-PAE

                        Plaintiff,

vs.

THE SHIPWRECKED AND ABANDONED SS
MANTOLA, its cargo, apparel, tackle, and appurtenances,
etc., located within a five nautical mile radius of the
coordinates 49º 50' 16.391''N, 13º 06' 11.767'' W, *in rem*,

                        Defendant.

_____/

## ANSWER BY CLAIMANT SECRETARY OF STATE
## FOR TRANSPORT OF THE UNITED KINGDOM

NOW COMES Claimant Secretary of State for Transport of the United Kingdom through

the Department for Transport (hereinafter DfT), pursuant to Rules 8 & 12 F.R.Civ.P., Supp. Rule

C(6)(a)(iv) and Supp. Rule E(8), and Answers the Verified Complaint as follows:

## JURISDICTION AND VENUE

1.      To the extent that paragraph 1 of the Complaint asserts a legal conclusion no

answer is required.  To the extent that there are assertions of fact contained in Paragraph 1 of the

Complaint, they are denied.  It is specifically denied that Supplemental Rule D provides a basis

for the action alleged by the plaintiff.

2.      Denied.

3.      Denied.

4.    Denied.

## THE PARTIES

5.    Admitted.

6.    Admitted that the vessel is on the bottom of the Atlantic Ocean.  Admitted as to the general location of the vessel.  Without knowledge as to the exact coordinates of the vessel.  Admitted that Odyssey Marine Exploration, Inc. (hereinafter OMEX) has provided coordinates to the Court, under seal.  Denied that OMEX has any rights as exclusive salvor of the vessel.

7.    Admitted that OMEX located the Vessel in 2011 while under contract with the DfT to salvage cargo from the Vessel.  Without knowledge as to the specific means OMEX used to survey the shipwreck site and recover artifacts.

8.    Admitted that the Mantola was a United Kingdom flagged 8,260 gross ton passenger steamship, built in 1916 by Barclay Curle & Co. which sank on or about February 9, 1917 during World War I, as a result of enemy action.  Also admitted that at the time of its sinking, the Vessel was owned by the British-India Steam Navigation Company.  Except as expressly admitted, the DfT is without knowledge of the details of research and preliminary assessment of the shipwreck site by OMEX's technicians and historians.

9.    Admitted that at the time the Vessel sank, its cargo included 536 bars of silver insured under the terms of the Government War Obligations Act 1914, c.11 (Eng.), for which an insurance claim was paid.  Also admitted that the government of the United Kingdom, through the Department for Transport ("DfT") owns the silver bars and had claimed ownership of this cargo in the past.  Except as expressly admitted the DfT is without knowledge.

10.    Admitted that the DfT and OMEX entered into a salvage contract for the SS Mantola in 2011 and that under the terms of the contract OMEX agreed, on a no cure-no pay

basis to assume the risk, expense and responsibility for the search, cargo recovery, documentation and marketing of the cargo in exchange for 80% of the net recovery. Also admitted that the contract, after renewal in 2013, expired in September 2015 and that in 2015 the salvage contract was not extended or renewed and that subsequent to Sept. 2015 the DfT has not entered into any new salvage contracts. Except as expressly admitted the allegations in paragraph 10 are denied.

11.    Denied.

12.    Admitted that no salvor is currently under contract to the DfT to conduct salvage operations on the SS Mantola. Without knowledge of whether any other salvor is currently working on the Vessel. Without knowledge of whether any other salvor has sought to protect an interest in the Vessel or its cargo through an *in rem* action or arrest in any jurisdiction.

13.    Without knowledge.

14.    Without knowledge.

15.    Denied that OMEX has maintained actual, continuous, and exclusive possession or constructive occupancy of the shipwreck site since it first located the Vessel. Without knowledge as to the intentions of OMEX or whether it can recover cargo in a commercially viable manner.

16.    Without knowledge.

17.    Without knowledge.

18.    Without knowledge.

19.    Without knowledge.

20.     Admitted that a ship's bell inscribed with the letters "MANTOLA" has been delivered to the United Kingdom Receiver of Wreck and is under the jurisdiction of the Receiver of Wreck.  Except as expressly admitted, without knowledge.

21.     Without knowledge.

22.     Without knowledge as to documentation of the silk cloth.  Admitted that OMEX documented objects it found on the Vessel or at the shipwreck site, while acting under contract to the DfT.  Without knowledge as to documentation of any objects recovered on the Vessel or in the shipwreck site after the contract with the DfT expired. Denied that additional artifacts and cargo recovered from the Vessel should be recovered under the jurisdiction of this Court or possessed by the substitute custodian.

23.     Without knowledge.

24.     Without knowledge.

## FIRST CAUSE OF ACTION

### POSSESSORY AND OWNERSHIP CLAIM
### <u>PURSUANT TO THE LAW OF FINDS</u>

25.     The DfT restates and incorporates herein its responses to paragraphs 1 through 24 as if fully set forth.

26.     Denied.

27.     Denied..

28.     Denied.

29.     Denied.

## SECOND CAUSE OF ACTION

### CLAIM FOR RIGHTS TO THE VESSEL
### PROPERTY DEPOSITED WITH THE COURT

30.     The DfT restates and incorporates herein its responses to paragraphs 1 through 29 as if fully set forth.

31.     Denied.

32.     Denied.

33.     Denied.

## THIRD CAUSE OF ACTION

### CLAIM FOR SALVAGE RIGHTS O THE
### VESSEL INCLUDING ITS CARGO AND
### ARTIFACTS AT THE SHIPWRECK SITE

34.     The DfT restates and incorporates herein its responses to paragraphs 1 through 33 as if fully set forth.

35.     Denied.

36.     Denied.

37.     Without knowledge.

38.     Without knowledge.

39.     Without knowledge.

40.     Without knowledge.

41.     Denied.

## FOURTH CAUSE OF ACTION

42.     The DfT restates and incorporates herein its responses to paragraphs 1 through 41 as if fully set forth.

43.     Denied.

44.    Denied.

45.    Admitted that OMEX is under no current legal obligation to the DfT to render salvage services to the Vessel.  Except as expressly admitted, without knowledge.

46.    Without knowledge.

47.    Denied.

## FIFTH CAUSE OF ACTION

## CLAIM FOR INJUNCTIVE RELIEF
## TO PROTECT THE RECOVERY OPERATION

48.    The DfT restates and incorporates herein its responses to paragraphs 1 through 47 as if fully set forth.

49.    Denied.

50.    Without knowledge.

51.    Without knowledge.

52.    Denied.

## AFFIRMATIVE DEFENSES

1.    The Verified Complaint, *in rem* ("Complaint") fails to state a claim upon which relief can be granted and should be dismissed for failure to comply with Rule 8(d)(1) Fed. R. Civ. P., which requires that "each allegation must be simple concise and direct."  Each cause of action in the Complaint is impermissibly realleged in every succeeding cause of action.

2.    The Complaint fails to state a claim upon which relief may be granted to the extent that plaintiff has attempted to allege a claim pursuant to Rule D of the Supplemental Rules for Admiralty or Maritime Claims. Supplemental Admiralty Rule D provides an action *in rem* for possessory, petitory or partition actions.  Plaintiff has not alleged that it has been wrongfully deprived of possession of the SS Mantola based on a contractual or ownership right to possess

the vessel. Plaintiff has not alleged that it holds title to the vessel for purposes of a petitory action, and plaintiff has not alleged any factual basis for sale of the vessel for purposes of partition of interests in the vessel. The cause of action alleged based on Supplemental Admiralty Rule D should therefore be dismissed under Rule 12(b)(6) Fed. R. Civ. P. and because the facts alleged do not support exercise of *in rem* jurisdiction under Supplemental Admiralty Rule D.

3. The Complaint fails to state a claim upon which relief may be granted on the claim for ownership of the vessel or her cargo based on the Law of Finds. OMEX acknowledged in the Verified Complaint that it has previously contracted to salvage the SS Mantola and her cargo, thereby acknowledging that the vessel and her cargo are owned. The claim for ownership under the Law of Finds should be dismissed under Rule 12(b)(6) Fed. R. Civ. P.

4. To the extent that OMEX alleges a cause of action under the Law of Finds, that cause of action should be dismissed under Rule 12(b)(1) for absence of subject matter jurisdiction because this Court does not have *in rem* jurisdiction over property that OMEX has not reduced to its possession, as required by the Law of Finds, and has no basis upon which to exert constructive or *quasi in rem* jurisdiction over property outside the territorial jurisdiction of this Court, based on the Law of Finds.

5. The second cause of action fails to state a claim upon which relief may be granted. There is no cause of action for exclusive salvage rights regarding property that has been salvaged and is in the custody of the Court. The second cause of action should be dismissed under Rule 12(b)(6) Fed. R. Civ. P.

6. The third cause of action fails to state a claim upon which relief may be granted on the claim for exclusive salvage rights. While this Court may issue orders to protect a salvor's ongoing salvage activities and the salvor's lien against salvaged property and property in the

process of being salvaged, there is no cause of action for exclusive salvage rights. Orders protecting a salvor's rights must be based on specific facts relative to the salvor's activities, allegation of specific facts regarding the interference with salvage activities, and allegation of facts sufficient to exercise personal jurisdiction over any party interfering with the salvor's activities. The third cause of action does not make the necessary specific allegations of fact to adjudicate salvage rights or to enjoin salvage activity by any specific party. This is an action *in rem* in which the vessel is the defendant. In the absence of allegation of interference with the rights of the salvor and allegation of *in personam* jurisdiction over parties to be enjoined, there is no basis for injunctive relief arising out of exercise of *in rem* jurisdiction. The third cause of action should be dismissed under Rule 12(b)(6) Fed. R. Civ. P.

7.     The Government of the United Kingdom is the owner of the SS Mantola and her cargo by virtue of the operation of the Government War Obligations Act 1914, c.11 (Eng.) and the fact that the Vessel was sunk by enemy action during World War I. The Government of the United Kingdom, acting through the DfT, as owner of the SS Mantola and her cargo has never abandoned the SS Mantola nor relinquished title or ownership and does not now relinquish its ownership of the Mantola, its cargo, debris trail, etc., nor has it ever given up any rights to any property of the United Kingdom that might be on or near the location of the vessel alleged in this action. The DfT also has not abandoned or relinquished its right to control salvage of the S.S. Mantola or her cargo. OMEX has recognized the authority of the DfT over the wreck of the S.S. Mantola and her cargo by contracting with the DfT and by consenting to the jurisdiction of the United Kingdom Receiver of Wreck to adjudicate title to property recovered from the S.S. Mantola and adjudicate salvage awards arising out of recovery of property from the wrecksite. Therefore, under these facts, OMEX is barred from asserting salvage rights in a U.S. District

Court.  The Complaint should be dismissed under  Rule 12(b)(6) Fed. R. Civ. P. because OMEX cannot prove the necessary elements for a salvage claim.

8.    Plaintiff's right to a salvage award is barred because salvage services provided prior to the date of this action were provided under contract that expired in September 2015 and the DfT has rejected additional salvage services offered by plaintiff prior to plaintiff providing any salvage services of value to the DfT.  Specifically, the DfT provided notice to OMEX in September 2015 that the prior permission for OMEX to conduct salvage services under contract had not been renewed and provided written notice to OMEX on July 6, 2017 the vessel was not abandoned, no permission to salvage the vessel had been given, that salvage services by OMEX are specifically rejected, and that OMEX is specifically prohibited from salvaging the SS Mantola or her cargo. Thereafter, in its Verified Statement of Right or Interest the DfT stated the SS Mantola is owned by the Government of the United Kingdom, that the vessel has not been abandoned and that the DfT had not consented to salvage of the vessel by OMEX.  Therefore the warrant of arrest should be vacated and the case dismissed.

9.    The International Convention for the Unification of Certain Rules Relating to the Salvage of Vessels at Sea 1910 (The Brussels Convention), as amended in 1989; in the United States, The Salvage Act, August 1, 1912 c. 268; 37 Stat. at L. 242; 46 U.S. Code 727-731; effective March 1, 1913 is applicable to this action.  The 1910 Salvage Convention at Art. 3 and the 1989 Salvage Convention at Article 9 prohibits recovery by persons who take part in salvage notwithstanding the express and reasonable prohibition on the part of the owner of vessel to which services were rendered.

10.    Plaintiff's salvage claim is barred by the maritime law of the United States, which provides that the owner of a vessel may reject salvage services.  The SS Mantola became

property of the Government of the United Kingdom after the vessel was sunk during WW I by enemy action and has been managed as Crown property since the end of World War I.  The responsibility for dealing with and recovering such Crown property has been managed by various government entities over time and currently resides with the DfT which provides procedures for application for contracts for salvage of Crown property and which upon expiration of a contract with OMEX for salvage services to the SS Mantola rejected additional salvage services offered by OMEX.

11.     This action should be dismissed pursuant to Rule 12(b)(3) on the grounds of forum non conveniens in that this action involves a World War I merchant vessel sunk by enemy action, which is lying in international waters.  After the vessel was lost, ownership passed to the Government of the United Kingdom.  The laws of the United Kingdom provide a forum for recovery of a salvage award by a salvor and for determination of ownership of salvaged property.  As a result of the 2011 to 2015 contractual relationship between Odyssey and the DfT, OMEX has actual knowledge that the vessel and the cargo it seeks to recover are owned by the DfT and therefore sovereign property of the United Kingdom.  Additionally, OMEX has delivered property salvaged from the Vessel to the UK Receiver of Wreck for determination of salvage award and ownership of the property.  The private and public factors applicable in a forum non conveniens analysis favor resolution of this case pursuant to the laws of the United Kingdom through the procedures provided through the United Kingdom Receiver of Wreck and the courts in England.

12.     This action involves a World War I merchant vessel sunk by enemy action, which is lying in international waters.  After the vessel was lost, ownership passed to the Government of the United Kingdom under the terms of the Government War Obligations Act 1914, c.11

- 10 -

(Eng.), and insurance claims paid for loss of the vessel and her cargo. This case should be dismissed under Rule 12(b)(1) Fed. R. Civ. P. for lack subject matter jurisdiction based on the Foreign Sovereign Immunities Act 28 U.S.C.A. §§ 1601 – 1611 in that the property that is the subject of this action is property is owned by a foreign sovereign and therefore under 28 U.S.C.A. § 1609 is not subject to arrest under *in rem* process issued by a United States District Court.

13.     Plaintiff's salvage claim fails because services to the vessel in obtaining video and photos of the Vessel, documentation of the wrecksite, and recovery of the property upon which arrest of the vessel and constructive jurisdiction over the wreck is based, were accomplished while OMEX was under contract to the DfT. Therefore the salvage services rendered to the vessel were services rendered under contract rather than voluntary services. To the extent property used to assert *in rem* jurisdiction in this action was recovered by OMEX while OMEX was under contract to the DfT, OMEX does not have a maritime lien against such property and therefore no basis for a salvage claim.

14.     Plaintiff's fifth cause of action fails to state a claim upon which relief may be granted should be dismissed under Rule 12(b)(6) Fed. R. Civ. P. in that it fails to make specific allegations of fact necessary to support injunctive relief, fails to allege any basis for irreparable harm necessary to support injunctive relief and fails to allege *in personam* jurisdiction over any party to be enjoined. The current *in rem* jurisdiction over the Vessel does not support *in personam* injunctive relief.

WHEREFORE having answered the Complaint and upon the affirmative defenses alleged, the DfT prays for dismissal of the Complaint and that the warrant of arrest *in rem* and the Order appointing the Plaintiff as substitute custodian be vacated.

- 11 -

Dated at Tampa, Florida this 7th day of September, 2017.

> _/s/ Timothy P. Shusta_____
> Timothy P. Shusta, Esq.
> PHELPS DUNBAR LLP
> 100 South Ashley Drive • Suite 1900
> Tampa, Florida 33602-5315
> (813) 472-7550
> shustat@phelps.com
> Attorneys for Secretary of State for Transport of the
> United Kingdom

## CERTIFICATE OF SERVICE

I, hereby certify that on September 7, 2017 I made due service of the foregoing Answer to the Verified Complaint by electronically filing with the Clerk of Court using the CM/ECF system.

> /s/ Timothy P. Shusta
> Timothy P. Shusta
> Attorney for the Secretary of State for Transport
> of the United Kingdom